UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN R. GU,

                Plaintiff,        Civil Action No. 19-10901
                                          Honorable Arthur J. Tarnow
v.                                              Magistrate Judge David R. Grand

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [19, 21]

Plaintiff John R. Gu ("Gu") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (Docs. #19, #21), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.**    **RECOMMENDATION**

For the following reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Gu is not disabled under the Act. Accordingly, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment (**Doc. #21**) be **GRANTED**, Gu's Motion for Summary Judgment

(**Doc. #19**) be **DENIED**, and that pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision be **AFFIRMED**.

## II.     REPORT

### A.     Background

Gu was 47 years old at the time of his alleged onset date of December 26, 2009, and at 6' tall weighed approximately 175 pounds during the relevant time period. (Tr. 38, 204, 210). He earned college and graduate degrees, working most recently as an international relocation advisor in the auto industry, until he was laid off in December 2009. (Tr. 38, 46-47, 204-05). Since that time, he has been self-employed as a consultant, although his work has been somewhat sporadic. (Tr. 48-50). More than six years after he lost his job, Gu applied for DIB, alleging that he has been disabled since December 26, 2009, primarily as a result of hearing loss. (Tr. 37, 51, 204).

After Gu's application for DIB was denied at the initial level on July 18, 2016 (Tr. 90-93), he timely requested an administrative hearing, which was held on December 1, 2017, before ALJ Patrick MacLean (Tr. 29-80). Representing himself, Gu testified at the hearing, as did vocational expert ("VE") JoAnne White. (*Id.*). On March 14, 2018, the ALJ issued a written decision finding that Gu is not disabled under the Act. (Tr. 16-24). On December 14, 2018, the Appeals Council denied review. (Tr. 6-10). Gu timely filed for judicial review of the final decision on March 27, 2019. (Doc. #1).

The Court has carefully reviewed the transcript in this matter, including Gu's medical record, function and disability reports, and testimony as to his conditions and resulting limitations. Instead of summarizing that information here, the Court will make

references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

### B.     The ALJ's Application of the Disability Framework Analysis

Under the Act, DIB are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Gu is not disabled under the Act. At Step One, the ALJ found that Gu has engaged in substantial gainful activity since December 26, 2009 (the alleged onset date). (Tr. 18). In order "to afford the claimant the opportunity for a full review of evidence of record," however, the ALJ proceeded to the remaining steps of the sequential analysis. (Tr. 19). Therefore, at Step Two, the ALJ found that Gu has the severe impairment of sensorineural hearing loss. (*Id.*). At Step Three, the ALJ found that Gu does not have an impairment or combination of impairments that meets or medically equals a listed impairment. (Tr. 20).

The ALJ then assessed Gu's residual functional capacity ("RFC"), concluding that he is capable of performing the full range of work at all exertional levels, with the following non-exertional limitations: must avoid exposure to hazardous moving machinery, and is limited to occupations that do not require more than frequent face-to-face conversations and occasional telephone communication. (*Id.*).

At Step Four, the ALJ found that Gu is not capable of performing his past relevant work. (Tr. 22). At Step Five, the ALJ determined, based in part on testimony provided by the VE in response to hypothetical questions, that Gu is capable of performing jobs at the

medium, light, and sedentary exertional levels, including kitchen helper (300,000 jobs nationally), hospital cleaner (900,000 jobs), garment sorter (170,000 jobs), merchandise marker (170,000 jobs), document preparer (600,000 jobs), and lens inserter (100,000 jobs). (Tr. 23). As a result, the ALJ concluded that Gu is not disabled under the Act. (Tr. 24).

### C. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *See Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y*

*of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).

**D.     Analysis**

Before this Court, Gu raises three primary arguments[1]: (1) the ALJ erred in finding that his hearing impairment does not meet Listing 2.10; (2) the ALJ's RFC finding is not supported by substantial evidence; and (3) the ALJ erred in relying on faulty VE testimony. (Doc. #19 at 10-21). Each of these arguments is addressed below.

---

[1] Gu also argues that the ALJ erred at Step One of the sequential analysis in finding that he engaged in substantial gainful activity ("SGA") after the alleged onset date. (Doc. #19 at 7-9). It is true that the ALJ found that Gu earned income exceeding SGA levels in 2010, 2011, and 2012 and, thus, denied his claim at Step One through December 31, 2012. (Tr. 19). Gu argues that the earnings reported in these years should not have constituted SGA because they included severance payments and reimbursement for out-of-pocket expenses. (Doc. #19 at 7). While the Commissioner appears to concede that the ALJ's SGA analysis was faulty in some respects, he maintains that any such error is harmless because the ALJ continued with the disability evaluation through subsequent steps of the sequential analysis. (Doc. #21 at 11). The Court agrees. *See, e.g., Bamberger v. Berryhill*, No. 16-13593, 2018 WL 1098653, at *3 (E.D. Mich. Feb. 6, 2018) ("[E]ven if the ALJ did err at step one, that error would be harmless since the ALJ continued the sequential analysis.") (citing *Quisenberry v. Comm'r of Soc. Sec.*, No. 12-13650, 2013 WL 4507931, at *6 (E.D. Mich. Aug. 23, 2013)). Thus, the Court need not discuss in detail the merits of Gu's SGA argument because any error made at Step One was harmless in this case.

*1. Substantial Evidence Supports the ALJ's Step Three Analysis*

At Step Three of the sequential analysis, the ALJ found that although Gu's hearing loss is a severe impairment, it does not meet or medically equal any listed impairment, "including listings 2.10 and 2.11."[2] (Tr. 20). Gu now argues that the ALJ erred at Step Three in "summarily conclud[ing]" that his hearing loss does not meet a listed impairment. (Doc. #19 at 12).

To begin with, although the ALJ's Step Three discussion is not extensive, "it is well-settled that the Court may look at the rest of the ALJ's decision in order to determine whether substantial evidence supports the ALJ's Step Three determination." *Smukala v. Comm'r of Soc. Sec.*, No. 15-10612, 2016 WL 943953, at *10 (E.D. Mich. Feb. 23, 2016). Indeed, recent Sixth Circuit decisions have declined to require remand when the ALJ provided minimal reasoning at Step Three of the sequential analysis if the ALJ made sufficient factual findings elsewhere in the decision to support his or her Step Three conclusions. *See, e.g., Malone v. Comm'r of Soc. Sec.*, 507 F. App'x 470, 472 (6th Cir. 2012) (finding that the ALJ's conclusory Step Three determination was supported by substantial evidence in the record, and thus it was unnecessary for the ALJ to make specific findings regarding a particular listed impairment). Thus, an ALJ's failure to articulate Step Three findings is harmless where concrete factual and medical evidence is apparent in the record and shows that even if the ALJ had made the required findings, the ALJ would have

---

[2] The Listing of Impairments, located at Appendix 1 to Subpart P of the regulations, describes impairments the Social Security Administration considers "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a).

found the claimant not disabled. *See M.G. v. Comm'r of Soc. Sec.*, 861 F. Supp. 2d 846, 861 (E.D. Mich. 2012); *see also Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 365-66 (6th Cir. 2014) (finding that any error in the ALJ's Step 3 findings "is harmless, because Forrest has not shown that his impairments met or medically equaled in severity any listed impairment"). Applying these standards, a review of the ALJ's decision as a whole makes clear that any articulation error at Step Three is harmless.

> In arguing that he meets the criteria of Listing 2.10(B), Gu asserts as follows:
>
>> Listing 2.10(B) provides that for "hearing loss not treated with cochlear implantation," a claimant is disabled within the Listing of Impairments if hearing tests show "[a] word recognition score of 40 percent or less in the better ear using a standardized list of phonetically balanced monosyllabic words.["]  In this case, on October 31, 2017, Gu submitted test results to the ALJ showing that his speech distinction/recognition scores had worsened to 12% in the right []ear and 24% in the left ear. ([Tr.] 373-376). Gu's hearing tests show a word restriction score of 24%, well below the threshold for the Listing of Impairments. The ALJ therefore erred in finding that Gu did not meet or equal the Listing.

(Doc. #19 at 10). The problem with this argument, however, is that Gu overlooks other criteria, outside subsection B, that the Listing also requires, and that he cannot satisfy.

Gu is correct that Listing 2.10(B) requires him to show "word recognition" testing with a score of 40% or less in the better ear. 20 C.F.R. pt. 404, subpt. P, app. 1 § 2.10(B). But that is only one of the elements he must satisfy. Gu was also required to show that a licensed audiologist or an otolaryngologist performed or directly supervised the testing. *See* 20 C.F.R. pt. 404, subpt. P, app. 1 § 2.00(B)(1)(c). He also was required to show that "an otoscopic examination [was performed] immediately before the audiometric testing," again by a licensed audiologist or otolaryngologist, that shows "no conditions that would

8

prevent valid audiometric testing, such as fluid in the ear, ear infection, or obstruction in an ear canal." *See* 20 C.F.R. pt. 404, subpt. P, app. 1 § 2.00(B)(2)(b).

Gu cites no word recognition testing that meets these criteria. Instead, he cites only a single test, from October 2017, that appears to show scores of 40% or less. (Doc. #19 at 10 (citing Tr. 376)). Setting aside the fact that other tests consistently show scores above 40% (Tr. 361, 364, 372), the October 2017 test does not satisfy all of the criteria of Listing 2.10. Specifically, the test was performed by Kim Pawliger, who appears to be a hearing aid specialist ("BA-HIS"). (Tr. 374). There is no evidence that Ms. Pawliger is, or was directly supervised by, a licensed audiologist or otolaryngologist. Also, no evidence shows that the October 2017 test immediately followed a qualifying otoscopic examination.[3] Thus, regardless of any articulation deficiency in the ALJ's Step Three analysis, there is no error warranting remand where concrete factual and medical evidence in the record shows that the ALJ still would have found that Gu's impairments do not meet the criteria of Listing 2.10(B). *See Smoot v. Comm'r of Soc. Sec.*, No. 15-13081, 2016 WL 1358086, at *4 (E.D. Mich. Feb. 12, 2016) (declining to remand where medical evidence failed to satisfy Listing 2.10's requirements). Moreover, it was Gu's burden to identify evidence showing that he met or medically equaled the Listing in question, and he clearly failed to do so. For all of these reasons, Gu's Step Three argument fails.

---

[3] Jacqueline Ranker, an audiologist, performed an audiological examination in June 2017 that showed speech recognition of 60% in the left ear. (Tr. 372). She also performed an examination in June 2016 that showed the same score. (Tr. 361). The June 2016 audiological examination followed an otoscopic examination the same day. (Tr. 359).

## 2. *Substantial Evidence Supports the ALJ's RFC Finding*

As set forth above, the ALJ found that Gu retains the RFC to perform the full range of work at all exertional levels, with the following non-exertional limitations: must avoid exposure to hazardous moving machinery and is limited to occupations that do not require more than frequent face-to-face conversations and occasional telephone communication. (Tr. 20). Gu seems to challenge this finding, arguing principally that the ALJ erred in his handling of his hearing tests. But the ALJ appropriately considered the record evidence, including the results of Gu's hearing tests. (Tr. 21).

In his motion, Gu variously asserts that these test results were "indecipherable," "technical jargon," and "effectively meaningless," and he claims that his hearing loss was "much more severe than the ALJ determined" and "getting worse." (Doc. #19 at 15, 16, 18). Gu's assertions in this respect are belied by other evidence of record. For example, after a June 2016 test showed that Gu's hearing was worse at higher frequencies (Tr. 361), Robert Hong, M.D. described Gu's hearing loss as "moderate sloping to severe" in the right ear and "mild sloping to moderate" in the left ear (Tr. 359). At the same time, Dr. Hong concluded that Gu was not a candidate for a cochlear implant. (Tr. 360). Similarly, after another June 2016 test, hearing aid specialist Felix Cruz described Gu's hearing loss as only "mild to moderate." (Tr. 364). And, finally, as the ALJ correctly observed, no treating physician recommended any restrictions due to Gu's hearing impairment.[4] (Tr. 22). It was

---

[4] On this point, Gu argues that "because the ALJ faulted Gu for not providing a statement from his doctors regarding the specific limitations caused by his hearing loss, he should have further developed the record by asking the treating physicians to provide more detailed statements." (Doc. #19 at 16). This argument misses the mark, as the ALJ did not identify a "deficiency in the record" that prevented him from making a proper determination of Gu's RFC (*Id.* at 17), as Gu claims;

both reasonable and appropriate for the ALJ to consider the results of Gu's hearing tests, as well as professional characterizations of those results, in formulating Gu's RFC. *See Olshelfske v. Comm'r of Soc. Sec.*, No. 18-12095, 2019 WL 4892422, at *8 (E.D. Mich. Aug. 16, 2019) ("It was within the ALJ's purview to analyze the objective medical evidence and to formulate an RFC based on that evidence.").

In determining Gu's RFC, the ALJ also pointed out that Gu's hearing loss did not prevent him from engaging in various activities, such as traveling to China to visit family, preparing meals, driving, using public transportation, shopping, using a computer, exercising, caring for a pet, playing volleyball, and performing household chores. (Tr. 21-22). This was an appropriate consideration. *See Smoot*, 2016 WL 1358086, at *5 (finding that claimant's ability to handle personal needs independently, prepare meals, shop, engage in housework, watch television, listen to music, and spend time with others supported ALJ's determination that claimant's hearing loss was not disabling). Additionally, the ALJ properly considered his own observations, noting that Gu appeared to hear adequately during the hearing.[5] (Tr. 21). *See Smoot*, 2016 WL 1358086, at *5 (finding that claimant's ability to communicate without difficulty at consultative examination and to "communicate well" at administrative hearing supported ALJ's finding that she had no significant

---

rather, the ALJ simply observed that, "given [Gu's] allegations of totally disabling symptoms, one might expect to see some indication in the treatment records of restrictions placed on the claimant by his treating doctors." (Tr. 22). This was an appropriate observation. *See Maher v. Sec'y of Health & Human Servs.*, 898 F.2d 1106, 1109 (6th Cir. 1989) ("[A] lack of physical restrictions constitutes substantial evidence for a finding of non-disability.").

[5] Indeed, Gu testified during the hearing that he can hear people in a room similar to the room in which the administrative hearing occurred. (Tr. 57). Such testimony squares with the ALJ's own observations. A review of the transcript confirms the accuracy of the ALJ's observations.

11

communication difficulties).

In sum, where the ALJ considered his own observations, Gu's activities, the lack of any restrictions from a treating physician, and relevant objective medical evidence, the ALJ's RFC finding is supported by substantial evidence.

### 3. Substantial Evidence Supports the ALJ's Reliance on the VE's Testimony

Lastly, Gu challenges the ALJ's reliance on what he terms "confusing" testimony from the VE. (Doc. #19 at 19-21). Specifically, Gu argues that remand is required because "the questions posed to the [VE] were confusing, and the [VE] demonstrated confusion as to how to determine Gu's employability." (Doc. #19 at 19). The Court disagrees.

A fair reading of the exchange between the ALJ and the VE makes clear that the VE unequivocally testified that a hypothetical individual of Gu's age, education, work experience, and RFC could work as a kitchen helper, hospital cleaner, garment sorter, merchandise marker, document preparer, and lens inserter. (Tr. 74-75). In seeking to discredit this testimony, Gu characterizes the VE as "openly confused"; he then strings together various snippets of hearing testimony in a way that does not accurately characterize the record. (*Id.* at 20-21). For example, Gu claims that the VE was "confused about how to properly assess [his] hearing ability [and] its impact on his residual functional capacity[.]"[6] (*Id.* at 20). But, most of the alleged "confusion" cited by Gu in this respect is, in fact, the VE hedging regarding how to classify Gu's past relevant work and its talking

---

[6] It bears mentioning that it was the ALJ – not the VE – who was responsible for determining Gu's RFC. *See* 20 C.F.R. § 404.1546(c).

12

and hearing requirements. (*E.g.,* Tr. 67-68 (describing difficulty distinguishing between past relevant work as either "interpreting" or "translating")). Those issues ultimately proved wholly irrelevant because the ALJ based his decision on a finding that Gu can perform other work that does not involve transferable skills. (Tr. 23).

Similarly, although Gu claims that the VE was confused about "how to categorize which jobs might suit his RFC" (Doc. #19 at 20), the testimony he cites shows no such thing. As the Commissioner accurately summarizes, the testimony cited by Gu "includes a discussion of [Gu's] previous work"; "a slip of the tongue" (which the VE immediately corrected); and the VE "confirming [] that certain jobs would accommodate the limitations in the hypothetical question[.]" (Doc. #21 at 20-21; Tr. 65-79). The fact that the VE self-deprecatingly stated that Gu's particular restrictions required her to be "slow" as she needed "to look up what the DOT says about hearing" does not mean her conclusions were flawed. (Tr. 74). Indeed, while the VE may have been "slow" by her standards, she seemed quite adept at finding what she was looking for:

> A. Okay. So let me see what I have. I have medium jobs. Let me – I have medium jobs at the unskilled level. I'm sorry to be so slow, but I need to look up what the DOT says about hearing.
> 
> Q. Yeah. As I see it, this is a hearing loss case.
> 
> A. Yes. Okay. Okay. At the medium level, with an SVP of 2, there's kitchen helper, DOT number 318.687-010. The SVP is 2. The exertion is medium. And in terms of – talking is not present. Hearing is occasional. But, again, the DOT – I would think occasional hearing in a kitchen would be – would not involve using a phone, rarely. The number of jobs is approximately 300,000 in the national economy.
> 
> Q. Let me know when –

13

> A. I'm still checking. I'm sorry. I'm slow here. Okay. Hospital cleaner, the DOT number is 323.687-010, the SVP is 2, the exertion is medium. Hearing and talking are not present. And there are approximately 900,000 positions in the national economy.
>
> Q. Okay. Could you give –
>
> A. I can come up with another one, Your Honor. I just have to look at each one to assess the hearing.
>
> Q. Well, how about if you give us two at the light level?
>
> A. Oh, two, at light. At the light level –
>
> Q. If there are any.
>
> A. – there is garment sorter. The DOT number is 222.687-014. The SVP is 2. The work is light. The[re] talking and hearing are not present. And the number of positions is about 170,000 nationally. The second one is merchandise marker. The DOT number is 209.587-034. The SVP is 2. The work is light. There are approximately 800,000 positions. And talking and hearing are not present.
>
> Q. Can you give us two –
>
> A. Sedentary.
>
> Q. – examples?
>
> A. Okay. I have document preparer, DOT number 249.587-018. The SVP is 2. The work is sedentary. There are approximately 600,000 positions. And talking and hearing are not present. And I just don't – lens inserter, DOT number 713.687-026. The SVP is 2. The work is sedentary. Talking and hearing are not present. And there are approximately 100,000 positions in the national economy.

(Tr. 74-75).

Fundamentally, Gu cites nothing that undermines the VE's testimony that a hypothetical individual of Gu's age, education, work experience, and RFC can perform a substantial number of jobs that exist in the national economy. Therefore, the ALJ did not err in relying on that testimony.

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence.

## III. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment **(Doc. #21)** be **GRANTED**, Gu's Motion for Summary Judgment **(Doc. #19)** be **DENIED**, and the ALJ's decision be **AFFIRMED**.

Dated: December 23, 2019  s/David R. Grand
Ann Arbor, Michigan  DAVID R. GRAND
United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 23, 2019.

                                              s/Eddrey O. Butts
                                              EDDREY O. BUTTS
                                              Case Manager